[Cite as *Bellefontaine v. Miller*, 2009-Ohio-2818.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## LOGAN COUNTY

STATE OF OHIO,
CITY OF BELLEFONTAINE,

     PLAINTIFF-APPELLEE,          CASE NO.  8-08-32

     v.

JAMES R. MILLER,          O P I N I O N

     DEFENDANT-APPELLANT.

Appeal from Bellefontaine Municipal Court
Trial Court No. 08CRB01291

**Judgment Affirmed**

Date of Decision:   June 15, 2009

APPEARANCES:

    *James R. Miller,*  **Appellant**

    *William T. Goslee and Daniel L. Bennett*  **for Appellee**

**ROGERS, J.**

{¶1} Defendant-Appellant, James R. Miller, appeals the judgment of the Bellefontaine Municipal Court finding him guilty of leaving junk, unlicensed vehicles on private property, and ordering him to pay a $25 fine. On appeal, Miller argues that the trial court erred when it failed to make a record of a previous proceeding against him; erred when it failed to use a "de facto ruling" from the previous proceeding against him, in which he was found not guilty; erred in its understanding of Ohio's licensing system; erred when it failed to allow him to fully present his argument in the previous proceeding, which would have prevented the current proceeding from going to trial; and, erred in its consideration of the accuracy and truthfulness of the State's witness in both the previous and the current proceeding. Based upon the following, we affirm the judgment of the trial court.

{¶2} In July 2008, the Bellefontaine Police Department issued a notice of a "junk motor vehicle" violation to Miller, stating that he would be cited in violation of Bellefontaine City Ordinance 303.09(C) if he did not remove from his property an inoperable 1979 Chevrolet Camaro and an inoperable 1973 Pontiac GTO, both with no registration.

{¶3} In August 2008, the Bellefontaine Police Department cited Miller for leaving junk, unlicensed vehicles on private property in violation of Bellefontaine City Ordinance 303.09(C), a minor misdemeanor.

{¶4} In September 2008, the case proceeded to trial, at which Miller appeared pro se. Immediately prior to hearing testimony, Miller moved to dismiss the case on the basis of "res judicata" because he had been previously cited for violating the junk vehicle ordinance with the same vehicles in June, and the trial court found him not guilty. The trial court overruled Miller's motion, stating that "[i]t doesn't constitute res judicata, Mr. Miller. I decided the earlier one that in June you were not guilty of that violation[.] * * * Now you've been charged with violating the vehicle – violating the ordinance on August 16th, and whether you're in violation of the ordinance at that time or not I won't know until I hear the evidence[.]" (Trial Tr., p. 4).

{¶5} At trial, Officer Glenn Newland of the Bellefontaine Police Department testified that, in July 2008, he was dispatched to 1294 Campbell Drive in Bellefontaine, Ohio, regarding several junk vehicles; that he discovered an early 1970s Pontiac GTO, a 1979 Chevrolet Camaro, and a 1988 Chevrolet Celebrity[1] on the property; that all of the vehicles were in violation of a city ordinance regarding junk vehicles; that he spoke to Miller that day and Miller indicated that

---

[1] The Chevrolet Celebrity was later determined to belong to Miller's father, and is not a subject of this appeal.

-3-

he owned the GTO and Camaro; that the GTO had no current registration and bore a white license plate with green lettering that was from the early 1990s; that the engine in the GTO was unattached to the frame, clearly making the vehicle inoperable; that Miller admitted to him that the engine was not attached to the GTO; that the GTO had no current plates; that there was "junk" inside of the GTO and a canoe leaned up against it; that the Camaro was sitting in the yard with weeds growing up around it; that the Camaro had no plates and the VIN plate was rusted to the point that he could not read it; that he was unable to check the registration on the Camaro because it had no plates and the VIN was indecipherable; that Miller told him that the Camaro was inoperable; that he encouraged Miller to move the vehicles, to bring them into compliance, or to sell them, but that he did not seem open to any of those ideas; that he issued Miller a "code violation order" which is a form providing notice of a city ordinance violation and gives seven days for the offender to correct the problem; that he returned to the property in August 2008, well after the one-week period had elapsed, and found that nothing had changed, so he issued Miller a citation for the violations.

{¶6} On cross-examination, Officer Newland testified that he did not take any pictures of the rusted VIN numbers, and that the photograph he took of the GTO hood did not clearly show that the engine was disconnected.

{¶7} Miller testified that his address was 1294 Campbell Drive, Bellefontaine, Ohio; that the VIN numbers on the Camaro were intact; that he never told Officer Newland that either vehicle did not run; that the Camaro ran, however, it was not "street legal" because it did not have a catalytic converter; that he never told Officer Newland that the motor to the GTO was disconnected; that there were tags on the GTO, but there were no tags on the Camaro; that he had not registered the Camaro since 1995, and had not operated it since 1998; that he had not registered the GTO since the late 1980s, and it did not have valid plates; that the engine on the GTO was not in running condition; and, that the photographs demonstrated that the GTO had no headlights and had a flat tire.

{¶8} Thereafter, the trial court found Miller guilty, stating that "I'm satisfied with at least with regard to the [GTO] based upon what I've heard that it is in fact inoperable, and that also fits the definition of a junk vehicle." (Trial Tr., p. 23). The trial court ordered Miller to pay a $25 fine, plus court costs.

{¶9} In October 2008, Miller filed a motion for leave to untimely appeal, which this Court granted in December 2008.

{¶10} In March 2009, Miller filed a motion for leave to supplement the record with the judgment entries and supporting documents, including transcripts, from both the prior June proceeding against him, as well as a proceeding initiated subsequent to the September proceeding at issue.

{¶11} In April 2009, this Court denied Miller's motion for leave to supplement the record on appeal on the basis that a record may be supplemented only to add matters that were actually before the trial court and therefore, constitute part of the proceedings.

{¶12} It is from his conviction that Miller appeals, presenting the following pro se assignments of error for our review.

*Assignment of Error No. I*

**THE TRIAL COURT ERRED WHEN IT FAILED TO MAKE A RECORD OF THE PROCEEDINGS REGARDING CASE NO.: 08CRB00849 HEARD ON JUNE 30TH, 2008.**

*Assignment of Error No. II*

**THE TRIAL COURT SHOULD HAVE UTILIZED A DE FACTO RULING FROM CASE NO.: 08CRB00849, IN WHICH THE DEFENDANT WAS FOUND NOT GUILTY.**

*Assignment of Error No. III*

**THE TRIAL COURT ERRED IN ITS UNDERSTANDING OF THE LICENSING SYSTEM UTILIZED BY THE STATE OF OHIO.**

*Assignment of Error No. IV*

**THE TRIAL COURT ERRED WHEN IT FAILED TO ALLOW THE DEFENDANT TO FULLY PRESENT HIS ARGUMENT IN CASE NO.: 08CRB00849 WHICH WOULD HAVE PREVENTED CASE NO.: 08CRB01291 FROM GOING TO TRIAL.**

***Assignment of Error No. V***

**THE TRIAL COURT ERRED WHEN CONSIDERING THE ACCURACY AND TRUTHFULNESS OF THE STATE'S WITNESS IN CASE NO.: 08CRB01291 AND CASE NO.: 08CRB01977.**

***Assignment of Error No. I***

{¶13} In his first assignment of error, Miller contends that the trial court erred because it failed to make a record of a prior proceeding against him. Specifically, Miller argues that, because the trial court did not make a record of a prior proceeding against him, apparently regarding the same vehicles, it was impossible for him to obtain a dismissal of the current case.

{¶14} It is axiomatic that an appellate court may only consider evidence that was before the trial court in the proceeding being appealed from and was made part of the appellate record. *Bank One Lima, N.A. v. Altenburger* (1992), 84 Ohio App.3d 250, 256, citing *Paulin v. Midland Mut. Life Ins. Co.* (1974), 37 Ohio St.2d 109, 112. Thus, an appellate court may not make a decision based upon allegations founded upon facts outside of the record. App.R. 9(A); *State v. Ishmail* (1978), 54 Ohio St.2d 402. Accordingly, we cannot consider Miller's argument that, had the trial court made a record of the prior proceeding, he would have been able to dismiss the current proceeding, as this evidence was not before the trial court in the current proceeding being appealed.

{¶15} Accordingly, we overrule Miller's first assignment of error.

*Assignment of Error No. II*

{¶16} In his second assignment of error, Miller contends that the trial court erred when it failed to use a "de facto ruling" from the previous proceeding against him, in which he was found not guilty. Specifically, Miller argues that res judicata did not permit the second action against him based on new evidence.

{¶17} Miller was convicted of leaving junk, unlicensed vehicles on private property in violation of Bellefontaine City Ordinance 303.09, which provides, in pertinent part:

> **(c)     No person in charge or control of any property within the City, whether as owner, tenant, occupant, lessee, or otherwise, shall allow any partially dismantled, or non-operating, or wrecked, or junked, or discarded vehicle, or vehicle which does not have secured to it the full number of current license plates required by the laws of the State, to remain on such property longer than seven days[.] * * ***
> ** * ***
> **(e)     Whoever violates this section is guilty of a minor misdemeanor, and shall also be assessed any costs incurred by the Municipality in disposing of such junk motor vehicle, less any money accruing to the Municipality from such disposal. Each day such violation is committed or permitted to continue shall constitute a separate offense.**

{¶18} Additionally, the doctrine of res judicata provides that "'an existing final judgment, rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of rights, questions and facts in issue, as to the parties and their privies, in all other actions * * *.' Thus, a judgment in a former action acts as a bar in a subsequent action where the cause of action

prosecuted is the same." *State v. Hay*, 169 Ohio App.3d 59, 2006-Ohio-5126, ¶24, quoting *Norwood v. McDonald* (1943), 142 Ohio St. 299, 305.

{¶19} Here, Miller argues that res judicata did not permit the current action against him because he was previously prosecuted for the same offense, and that the trial court should have used a "de facto" not guilty ruling from the prior proceeding. However, Miller's res judicata argument lacks merit because Bellefontaine City Ordinance 303.09(e) clearly provides that "[e]ach day such violation is committed or permitted to continue shall constitute a separate offense." Although Miller's offense of violating the city ordinance is only punishable once, each day he fails to comply constitutes a separate punishable offense. See *Cleveland v. Modic*, 8th Dist. No. 63674, 1992 WL 390207, citing *Jones v. Thomas* (1989), 491 U.S. 376, 381, *Brown v. Ohio* (1977), 432 U.S. 161. Thus, res judicata did not bar his prosecution for this "separate offense."

{¶20} Accordingly, we overrule Miller's second assignment of error.

*Assignment of Error No. III*

{¶21} In his third assignment of error, Miller contends that the trial court erred in its understanding of Ohio's licensing system. Specifically, Miller argues that the State only requires vehicles currently being used on public roadways to have current license plates; thus, vehicles that are currently parked, stored, or used

exclusively on private property are not required to be licensed, making

Bellefontaine City Ordinance 303.09 based upon a nonexistent state law.

{¶22} R.C. 4503.191(A) governs issuance of display licenses, and

provides:

> **The identification license plate shall be issued for a multi-year period as determined by the director of public safety, and shall be accompanied by a validation sticker, to be attached to the license plate. The validation sticker shall indicate the expiration of the registration period to which the motor vehicle for which the license plate is issued is assigned, in accordance with rules adopted by the registrar of motor vehicles. During each succeeding year of the multi-year period following the issuance of the plate and validation sticker, upon the filing of an application for registration and the payment of the tax therefor, a validation sticker alone shall be issued. * * ***

{¶23} Additionally, Ohio Adm. Code 4501-27-02 governs license plate

service specifications and provides, in pertinent part:

> **(A)    A person who is the owner or operator of a motor vehicle may continue to display a license plate issued to that vehicle under sections 4503.19 and 4503.191 of the Revised Code until the license plate is lost, mutilated, or destroyed; becomes illegible; loses its reflectivity; or is declared obsolete under this rule, provided that the plate also displays a current and valid validation sticker and county identification sticker.**
>
> **(B)    No person who is the owner or operator of a motor vehicle shall display a license plate issued to a vehicle under sections 4503.19 and 4503.191 of the Revised Code if the license plate is mutilated or destroyed, becomes illegible, loses its reflectivity, or is declared obsolete under this rule.**
>
> **\* \* \***

**(F) All license plates having a white background with blue characters are determined to have exceeded their useful service life and are hereby declared obsolete effective upon the first registration expiration date occurring after the thirtieth day of September 2001.**

{¶24} As clarified in Miller's reply brief and oral argument, we construe his argument to be that Bellefontaine City Ordinance 303.09 is unconstitutional because he contends it conflicts with State law. However, because Miller did not raise the issue of constitutionality of the ordinance at trial, he has waived this argument and we need not address it. See *State v. Awan* (1986), 22 Ohio St.3d 120, syllabus.

{¶25} Accordingly, we overrule Miller's third assignment of error.

*Assignment of Error No. IV*

{¶26} In his fourth assignment of error, Miller contends that the trial court erred when it failed to allow him to fully present his argument in the prior proceeding, which he avers would have prevented the current proceeding from going to trial. Specifically, Miller argues that the trial court denied him equal protection of the laws because it did not afford him the opportunity to fully explain his "motion for dismissal" in the prior proceeding, in which he contends he would have alleged that the city arbitrarily chose to prosecute him and not others he claims were in violation of the ordinance.

{¶27} As stated in our analysis of Miller's first assignment of error, it is axiomatic that an appellate court may only consider evidence that was before the trial court in the proceeding being appealed from and that was made part of the appellate record. *Bank One Lima*, supra, citing *Paulin*, supra. Here, as records pertaining to the prior proceeding were not before the trial court in the present proceeding being appealed from, and were not made part of the appellate record, we may not consider this argument.

{¶28} Accordingly, we overrule Miller's fourth assignment of error.

*Assignment of Error No. V*

{¶29} In his fifth assignment of error, Miller contends that the trial court erred in its consideration of the accuracy and truthfulness of the State's witness in both the previous and the current proceeding. Specifically, Miller argues that Officer Newland's testimony was inaccurate because he identified Miller's father's truck as "green" instead of "dark blue and gray," and because he did not photograph the rusted VIN number plate on the Camaro. Additionally, Miller makes several references to alleged evidence outside of the record of the case before us.

{¶30} Substantively, Miller's argument is that his conviction was against the manifest weight of the evidence. When an appellate court analyzes a conviction under the manifest weight standard, it must review the entire record,

weigh all of the evidence and all of the reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175. Only in exceptional cases, where the evidence "weighs heavily against the conviction," should an appellate court overturn the trial court's judgment. Id.

{¶31} As discussed above, Miller was cited for violating Bellefontaine City Ordinance 303.09 prohibiting "junk vehicles," which provides, in pertinent part:

> **(c)    No person in charge or control of any property within the City, whether as owner, tenant, occupant, lessee, or otherwise, shall allow any partially dismantled, or non-operating, or wrecked, or junked, or discarded vehicle, or vehicle which does not have secured to it the full number of current license plates required by the laws of the State, to remain on such property longer than seven days[.] * * ***

{¶32} Here, the city presented evidence from Officer Newland that Miller admitted ownership of the two vehicles at his address, and that he admitted that the engine was not attached to the GTO and that the Camaro was inoperable. Further, Miller himself testified that the engine on the GTO was not in running condition, and that it had no headlights and a flat tire. Although Miller testified that he never told Officer Newland that either vehicle did not run or that the GTO engine was

disconnected, we cannot find that the trial court clearly lost its way and created a manifest miscarriage of justice, particularly given that the trial court is in the best position to weigh witness credibility. See *In re Jane Doe I* (1991), 57 Ohio St.3d 135, 138.

{¶33} Accordingly, we overrule Miller's fifth assignment of error.

{¶34} Finally, we note that, although not set forth in an assignment of error in his brief, Miller contended in the "statement of facts" of his reply brief and at oral argument that the trial proceedings were incorrectly transcribed, and that he filed a motion with the trial court to correct the transcript in March 2009. App.R. 16 requires an appellant's brief to contain a statement of the assignments of error set forth for review and an argument with respect to each assignment of error. Where arguments have not been adequately set forth for review, an appellate court is not required to address them. App.R. 16(A)(7); App.R. 12(A)(2). Accordingly, as Miller did not set forth this argument in an assignment of error in his appellate brief, we need not address it.

{¶35} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**WILLAMOWSKI and SHAW, J.J., concur.**

**/jlr**

-14-

Case No. 8-08-32